# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARIO CARRILLO,

        Plaintiff,

vs.                                         No. CIV 12-0573 JB/WPL

MCS INDUSTRIES, INC.,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Remand, filed June 26, 2012 (Doc. 11)("Motion for Remand"). The Court held a hearing on September 10, 2012. The primary issues are: (i) whether the Court may consider evidence submitted by the Defendant MCS Industries, Inc. in its Amended Notice of Removal, filed September 27, 2012 (Doc. 18), to determine whether the jurisdictional requirements are met; (ii) whether MCS Industries has established by a preponderance of the evidence that it is diverse to Plaintiff Mario Carrillo; and (iii) whether MCS Industries has established by a preponderance of the evidence that the amount-in-controversy is at least $75,000.00. For reasons stated on the record at the hearing, and for further reasons stated herein, the Court will deny Carrillo's Motion to Remand. The Court will allow MCS Industries to amend it Notice of Removal, filed May 25, 2012 (Doc. 1), to provide additional facts which show that the jurisdictional requirements are met, and the Court may properly consider those additional facts in determining if the diversity jurisdiction requirements are satisfied. MCS Industries has shown that Carrillo is a citizen of Texas for purposes of diversify jurisdiction. MCS Industries has provided evidence which shows that its nerve center and principal place of business is not anywhere in New Mexico or in Texas, making MCS Industries diverse to Carrillo. Lastly, the parties do not

dispute the facts which show that the amount-in-controversy at stake is likely to exceed $75,000.00. The Court, therefore, find that this matter falls within its diversity jurisdiction and may have been originally brought in federal court.

## PROCEDURAL BACKGROUND

On April 17, 2012, Carrillo filed this action against MCS Industries in the Third Judicial District, County of Dona Ana, State of New Mexico.  See Motion for Remand ¶ 1, at 1.  At the time he filed suit, Carrillo was residing in El Paso, Texas, but he worked at the MCS Industries plant in Santa Teresa, New Mexico, and on that basis Carrillo alleges that he is "subject to the laws of New Mexico."  Motion for Remand ¶ 4, at 1.  Carrillo asserts that jurisdiction is proper in Dona Ana County, because the MCS Industries facility where Carrillo worked when the incident giving rise to his claims occurred is in Dona Ana County.  See Plaintiffs' First Amended Petition at 1-2, filed April 17, 2012 in state court, filed in federal court on May 25, 2012 (Doc. 1)(filed concurrently with Defendant MCS Industries' Notice of Removal)("First Amended Petition").[1]  The incident resulted MCS Industries terminating Carrillo.  See First Amended Petition at 2.   Carrillo brings claims of discrimination, breach of an implied employment contract, and damages for lost wages, and pain and suffering against MCS Industries.  See First Amended Petition at 2-4.  Carrillo did not specify an amount of damages in his First Amended Petition, but requests "damages within the jurisdictional limits of this court."  First Amended Petition at 4.

MCS Industries removed this action to federal court on May 25, 2012.  See Notice of

---

[1]The Court's citations to Carrillo's First Amended Petition are to the page numbers included in Carrillo's original document, at the bottom-center of the page.

Removal at 1.[2]  MCS Industries alleged that Carrillo is a resident of Texas and a citizen of Texas for purposes of diversity jurisdiction.  See Notice of Removal ¶ 7, at 2.  MCS Industries asserts that it is not a New Mexico or Texas corporation, its principal place of business is not in New Mexico or in Texas, and thus for purposes of diversity jurisdiction, it is not a citizen of New Mexico or Texas.  See Notice of Removal ¶ 8, at 2.  MCS Industries asserts that Carrillo's salary at the time his employment was terminated on February 8, 2012, was least $37,000.00, exclusive of benefits. See Notice of Removal ¶¶ 10-11, at 2-3.  MCS Industries thus asserts that the amount in controversy will exceed $75,000.00, because Carrillo seeks not only lost past wages, but also lost future wages until he retires, as well as lost future income derived from bonuses, pay raises and rewards.  See Notice of Removal ¶ 12, at 3.  MCS Industries therefore alleges that this matter could have originally commenced in United States District Court under a federal court's diversity jurisdiction, pursuant to 28 U.S.C. § 1332 (2011), and is removable under 28 U.S.C. § 1441 (2011).  See Notice of Removal ¶¶ 13-14, at 3.  MCS Industries asserts that its Notice of Removal is timely, because its filing on May 25, 2012, is within thirty days of Carrillo's First Amended Petition being served "as calculated under the Federal Rules of Civil Procedure."  Notice of Removal ¶ 15, at 3.

Carrillo opposes MCS Industries' removal of this action to federal and moves the Court to remand the case to state court.  See Motion for Remand ¶ 3, at 1.  Carrillo asserts that his claims for wrongful termination, breach of an implied employment contract, and discrimination are based upon New Mexico law, not upon federal questions or claims which are actionable under federal law, and

---

[2]The Court's citations to MCS Industries' Notice of Removal are to the original page numbers for the document, located at the bottom-center of the pages.  MCS Industries's Notice of Removal included multiple documents in its filing with the Court, and thus the Court finds that citations to the separate documents by name and with their original page numbers adds to the clarity of the Court's memorandum opinion and order.

Carrillo asserts that his claims arise from actions that occurred in New Mexico, and do not involve a federal agency or federal actor.  <u>See</u> Motion for Remand ¶¶ 4, 7 at 1, 2.[3]  Carrillo asserts that MCS Industries, at the time he filed suit, was a New Mexico corporation "in good standing with the New Mexico Secretary of State," and with a corporate mailing address in Santa Teresa.  Motion for Remand ¶ 5, at 1-2.  Carrillo thus alleges that MCS Industries is a New Mexico corporation with its principal place of business in the New Mexico.  <u>See</u> Motion for Remand ¶ 5, at 2.  Carrillo argues that he has a "reasonable expectation to litigate claims in State Court in the State of New Mexico for claims arising from out [sic] of [MCS Industries'] facilities in Santa Teresa, New Mexico."  Motion for Remand ¶ 6, at 2.  Carrillo argues that MCS Industries' allegation that his damages will exceed $75,000.00, based on the affidavit of a human resources supervisor,  are insufficient.  <u>See</u> Motion to Remand ¶ 8, at 2 (citing Affidavit of Jessica Ehrhardt, executed May 25, 2012, filed May 25, 2012 with MCS Industries' Notice of Removal as Exhibit "B" (Doc. 1)("Ehrhardt Aff. -- AIC")).  Carrillo states that he has not made a demand for a specific amount of damages, and that MCS Industries' Notice of Removal contains only "conclusory statements" which do not provide any evidence that proves that the amount in controversy exceeds $75,000.00.  Motion to Remand ¶ 8, at 2-3.

Carrillo further asserts that this matter does not overcome the "presumption against removal jurisdiction."  Motion to Remand ¶ 9, at 3 (citing <u>Laughlin v. Kmart Corp.</u>, 50 F.3d 871, 873 (10th Cir. 1995)).  Carrillo argues that MCS Industries must establish by a preponderance of the evidence the "requisite amount in controversy and the existence of diversity" on the face of the complaint for

---

[3]Carrillo does not allege a claim for wrongful termination in his First Amended Petition, although he alleges a claim for breach of an implied employment contract.  <u>See</u> First Amended Petition at 3-4.

removal under diversity jurisdiction to be proper.  Motion to Remand ¶ 9, at 3 (citing Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001).  Carrillo argues that he has shown there is not complete diversity and that MCS Industries could reasonably anticipate being called to litigate in the State Court of New Mexico.  See Motion to Remand ¶ 10, at 3.  Carrillo also contends that he has incurred attorney's fees and costs in conjunction with filing his Motion to Remand, and he requests that the Court award him attorney's fees if the Court grants his Motion to Remand.  See Motion to Remand ¶ 11, at 3.

MCS Industries responded to Carrillo's Motion to Remand on July 10, 2012.  See Defendant's Response to Plaintiff's Motion to Remand, filed July 10, 2012 (Doc. 12)("Response").  MCS Industries asserts that it is not a New Mexico corporation.  See Response at 5.  MCS Industries argues that, because it was incorporated in Pennsylvania and its principal place of business is located in Pennsylvania, it is a Pennsylvania corporation.  See Response at 5, 7 (citing 28 U.S.C. § 1332(c)(1); Hertz Corp. v. Friend, 130 S.Ct. 1181, 1191 (2010); Shell Rocky Mountain Prod., LLC v. Ultra Res., Inc., 415 F.3d 1158, 1162-63 (10th Cir. 2005).  MCS Industries submits to the Court, in conjunction with its Response, the affidavit of a human resources supervisor, Jessica Ehrhardt.  See Affidavit of Jessica Ehrhardt, executed Jan. 1, 2012, filed July 10, 2012 (Doc. 12-1)("Ehrhardt Aff. -- Diversity").  MCS Industries contends that Ehrhardt, as a human resources supervisor, has knowledge that MCS Industries' place of incorporation and principal place of business is Pennsylvania.  See Response at 7.  MCS Industries further contends that Ehrhardt affirms that its corporate headquarters is in Easton, Pennsylvania, where its officers work.  See Response at 8.  MCS Industries also alleges that the Ehrhardt Aff. -- Diversity shows that MCS Industries is not incorporated in New Mexico, nor does MCS Industries assign any of its officers to its facility in New Mexico, because its principal place of business is in Easton.  See Response at 8.  MCS

Industries contends that these facts show its principal place of business is in Pennsylvania, and not in New Mexico.  See Response at 8.  MCS Industries further argues that Carrillo is a citizen of Texas, as he alleges both in his First Amended Petition and Motion to Remand that he resides in Texas.  See Response at 9.  MCS Industries asserts that these admissions establish Carrillo's citizenship to be Texas, and thus there is complete diversity between MCS Industries, a "citizen" of Pennsylvania, and Carrillo.  Response at 9.

Turning to Carrillo's allegations regarding the amount in controversy, MCS Industries alleges that the correct standard for a Court to use in determining whether the amount is met is if there is a "reasonable probability . . . i.e., that it is more likely than not  -- that the jurisdictional amount was met" based upon the facts existing at the time of removal.  Response at 10-11 (citing Hanna v. Miller, 163 F.Supp. 2d 1302 (D.N.M. 2001)(Kelly, J.)).  MCS Industries further argues that a Court may "aggregate actual damages, punitive damages, attorney's fees, and statutorily imposed penalties" in calculating whether the damages are more likely than not to meet the jurisdictional requirement.  Response at 11 (quoting Wiatt v. State Farm Ins. Cos., 560 F.Supp. 2d 1068, 1075 (D.N.M. 2007)(Browning, J.)).  MCS Industries contends that Carrillo is seeking past wages and benefits, future wages and benefits, as well as damages for emotional distress and physical impairment, punitive damages, and attorneys fees.  See Response at 12 (citing First Amended Petition at 10-11).  MCS Industries alleges that, although Carrillo does not state the amount of damages that he will seek, because his annual salary was in excess of $37,000.00, excluding benefits, when he was terminated, if Carrillo succeeds in receiving his lost salary and lost future income until his age of retirement, the amount of damages from wages alone would be more than $75,000.00, unless Carrillo retired immediately.  See Response at 13 (citing First Amended Petition at 11).  MCS Industries contends that Carrillo's claims for additional damages beyond lost

wages "reinforce that the amount in controversy is greater than $75,000.00."  Response at 14.

The Court held a hearing on this matter on September 10, 2012.  See Transcript of Hearing, taken September 10, 2012 ("Tr.").[4]  Carrillo opened by stating that he would stipulate that MCS Industries' removal was timely.  See Tr. at 2:10-11 (Granberg).  Carrillo argued, however, that the correct standard in determining a corporation's citizenship is the "nerve center test," meaning that the "epicenter is located not where the board meetings are . . . but where important functions are, where those decisions are made."  Tr. at 2:14-18 (Granberg).  Carrillo asserted that MCS Industries has not shown where it holds board meeting or makes detailed decisions about its operations; thus, MCS Industries has not shown where its "nerve center" is for purposes of determining MCS Industries' citizenship.  Tr. at 2:22-25 (Granberg).  Carrillo further argued that the amount in controversy has not been proven up, and Mr. Granberg, counsel for Carrillo, stated that he has not discussed the amount in controversy with Carrillo at any point, either formally or informally.  See Tr. at 3:9-16 (Granberg).

The Court inquired whether Carrillo would be satisfied that MCS Industries is not a New Mexico corporation if MCS Industries provides an affidavit or other evidence to the effect that the board meetings are held elsewhere -- not in New Mexico -- and that central activities are directed from out of state.  See Tr. at 3:17-25 (Court).  Carrillo stated that he would be satisfied that MCS Industries is not a New Mexico corporation if such evidence is provided.  See Tr. at 4:1-2 (Granberg).

Regarding the amount in controversy, the Court then inquired if Carrillo would be willing to stipulate that the amount of damages he seeks will be less than $75,000.00, and Carrillo replied

---

[4]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

that he would not be willing to so stipulate.  See Tr. at 4:3-7 (Court, Granberg).  The Court then asked Carrillo if he could estimate the approximate amount of damages that he will be seeking.  See Tr. at 4:8-16 (Court).  Carrillo stated that he will be seeking damages in the amount of his yearly income from his current age to his age of retirement, approximately eight years' worth of his salary upon termination -- $37,000.00 -- including benefits.  See Tr. at 4:16-18 (Granberg); id. at 5:5-7 (Court, Granberg).

Turning to MCS Industries, MCS Industries asserted that the Ehrhardt Aff. -- Diversity shows that MCS Industries is not a New Mexico or Texas corporation, but is "obviously incorporated in Pennsylvania," with its "principal place of business in Easton, Pennsylvania."  Tr. at 5:22-6:1 (Katovsky).  MCS Industries asserted that all the officers are in Easton and all the decisions are made in Easton.  See Tr. at 6:4-11 (Katovsky).  The Court inquired if MCS Industries has other facilities throughout the country, and MCS Industries stated that it does, but all its activities are directed out of Easton.  See Tr. at 6:14-20 (Court, Katovsky).  The Court inquired if MCS Industries would be able to provide an affidavit stating that all of MCS Industries' directs all of its corporate activities out of Easton.  See Tr. at 6:21-22 (Court).  MCS Industries stated that it would provide an affidavit to that effect.  See Tr. at 6:22 (Katovsky).

The Court pointed MCS Industries to the Court's decision in Thompson v. Intel Corp., No. CIV 12-0620 JB/LFG, 2012 WL 3860748 (D.N.M. Aug. 27, 2012)(Browning, J.), wherein the Court directed Intel Corp. to amend its notice of removal and to provide an affidavit to state that Santa Clara, California is the location of Intel Corp.'s corporate headquarters and the center of its business activities.  See Tr. at 6:21-7:5 (Court).  The Court inquired if MCS Industries would be able to amend its pleadings in a similar fashion.  See Tr. at 7:4-5 (Court).  MCS Industries said that it would be able to amend its pleadings to denote the location of its corporate headquarters and the center of

-8-

its business activities.  See Tr. at 7:5 (Katovsky).

With respect to the amount-in-controversy requirement, MCS Industries re-asserted that it is reasonable to assume the damages would easily be $75,000.00, based on Carrillo's allegations in the First Amended Petition.  See Tr. at 7:20-22, 7:25-8:4 (Katovsky).  MCS Industries asserted that Carrillo is seeking lost wages until his retirement -- at least eight years from now -- which MCS Industries asserts allows for "a reasonable inference [that] if [Carrillo is] claiming lost wages until retirement and [he is] making $37,000.00 a year," Carrillo's total damages will be "clearly over $75,000.00," and may even be as high as $237,000.00.  Tr. at 8:9-17 (Katovsky).

The Court stated that it was inclined to deny Carrillo's Motion to Remand.  See Tr. at 9:2-3 (Court).  The Court directed MCS Industries to amend its Notice of Removal and to provide further affidavits showing that MCS Industries satisfies the nerve center test.  See Tr. at 9:3-11 (Court).

MCS Industries filed an Amended Notice of Removal on September 27, 2012.  The Amended Notice of Removal incorporates MCS Industries' Notice of Removal by reference.  See Amended Notice of Removal ¶ 4, at 2.  MCS Industries states in the Amended Notice of Removal that it is

> incorporated in the State of Pennsylvania, its principal place of business is in Easton, Pennsylvania, and its officers including the Chairman of the Board of Directors/Chief Executive Officer, President/Chief Operating Officer, Executive Vice President and several other Vice Presidents are assigned to and work at the corporate headquarters in Easton Pennsylvania.  From this location, which is its nerve center, . . . MCS Industries' officers direct, control and coordinate its corporate business activities.

Amended Notice of Removal ¶ 11, at 3.  In support of these assertions, MCS Industries includes a second Ehrhardt affidavit.  See Affidavit of Jessica Ehrhardt, executed September 13, 2012, filed September 17, 2012, concurrently with the Amended Notice of Removal as Exhibit "C"(Doc. 18-2)("Amended Ehrhardt Aff. -- Diversity").  This subsequent affidavit contains three paragraphs

which were not in the Ehrhardt Aff. -- Diversity, filed with the Notice of Removal.  Compare

Ehrhardt Aff. -- Diversity ¶¶ 1-9, at 1-2, with, Amended Ehrhardt Aff. -- Diversity ¶¶ 6, 10,12, at

2.[5]  In these paragraphs, Ehrhardt affirms that:

> 6.     MCS Industries, Inc.'s officers direct, control and coordinate its corporate
> business activities from the corporate headquarters in Easton, Pennsylvania
> which is the location of its "nerve center."
>
> 10.    None of MCS Industries, Inc's corporate officers are residents or citizens of New
> Mexico.
>
> 12.    While MCS Industries, Inc. has a facility in New Mexico, it has similar facilities in
> other states including California and Pennsylvania.

Amended Ehrhardt Aff. -- Diversity ¶¶ 6, 10, 12 at 2.

As with MCS Industries' Notice of Removal, MCS Industries states again in its Amended

Notice of Removal that Carrillo's damages for lost wages and loss of future income, bonuses, pay

raises, and rewards until Carrillo's retirement exceed the amount in controversy requirement,

because his salary when terminated was "in excess of $37,000.00, exclusive of benefits."  Notice

of Removal, ¶¶ 11-12, at 4 (citing Ehrhardt Aff. -- AIC); Amended Notice of Removal ¶¶ 14-15, at

3-4 (citing Ehrhardt Aff. -- AIC).  MCS Industries, thus, once again asserts that this action is

removable to this Court under 28 U.S.C. § 1441, as it could have been commenced as an original

action in diversity in the United States District Court, under 28 U.S.C. § 1332.  See Notice of

Removal ¶¶ 13-14, at 4; Amended Notice of Removal ¶¶ 16, second 15, at 4.[6]

---

[5]The Amended Ehrhardt Aff. -- Diversity contains no paragraph "7," and two paragraphs
"10."  The Court will refer to the first paragraph "10" as "¶ 10," and the second paragraph "10" as
"second ¶ 10" so that the parties know to which paragraph the Court is referencing.

[6]MCS Industries' Amended Notice of Removal contains three paragraphs numbered as
sixteen, and two paragraphs numbered fifteen.  The Court will refer to the first paragraphs so
numbered as "¶ ___," and will refer to the second and third paragraphs as "second ¶ ___," and "third
¶ ___," so that the parties know to which paragraphs the Court is referencing.

## RELEVANT LAW REGARDING REMOVAL

"If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court 'embracing the place where such action is pending.'" Thompson v. Intel Corp., 2012 WL 3860748, at *4 (citing 28 U.S.C. § 1441(a)); see Huffman v. Saul Holdings Ltd. P'ship., 194 F.3d 1072, 1076 (10th Cir. 1999)).  Defendants may remove a civil action to federal court where the district court would have original jurisdiction over the case based upon diversity of citizenship.  Huffman v. Saul Holdings Ltd. P'ship., 194 F.3d at 1076 (quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)). Nonetheless, a presumption against removal jurisdiction exists, and federal courts "are to . . . narrowly [construe removal statutes] in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 404 F.3d 1090, 1095 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).  "All doubts are to be resolved against removal." Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir.1982).  The defendant seeking to remove an action to federal court bears the burden of establishing the district court's subject-matter jurisdiction over the case.  See Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

### 1.    The Presumption Against Removal.

Federal courts are courts of limited jurisdiction; thus, there is a presumption against removal jurisdiction which must be overcome by the defendant seeking removal.  See, Laughlin v. Kmart Corp., 50 F.3d 871, 873 (10th Cir. 1995); Fajen v. Found. Reserve Ins. Co ., 683 F.2d at 333; Martin v. Franklin Capital Corp., 251 F.3d 1284, 1290 (10th Cir. 2001); Bonadeo v. Lujan, No. CIV 08-0812, 2009 WL 1324119, *4 (D.N.M. Apr. 30, 2009)(Browning, J.)("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").  The defendant seeking

removal must establish that federal court jurisdiction is proper "by a preponderance of the evidence." McPhail v. Deere & Co., 529 F.3d 947, 953 (10th Cir.2008). See also Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden of proving all jurisdictional facts and of establishing a right to removal.").  Because federal courts are courts of limited jurisdiction, the United States Court of Appeals for the Tenth Circuit has ruled that "courts must deny such jurisdiction if not affirmatively apparent on the record."  Okla. Farm Bureau Mut. Ins. Co. v. JSSJ Corp., 149 F. App'x 775, 778 (10th Cir. 2005).

>        2.      **Procedural Requirements for Removal.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal. "Because removal is entirely a statutory right, the relevant procedures to effect removal must be followed." Thompson v. Intel Corp., 2012 WL 3860748, at *5.  A removal which does not comply with the express statutory requirements is defective and must be remanded to state court.  See Huffman v. Saul Holdings Ltd. P'ship, 194 F .3d at 1077.  See also Chavez v. Kincaid, 15 F.Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The [r]ight to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").

Section 1446(a) of Title 28 of the United States Code provides that a party seeking removal of a matter to federal court shall file a notice of removal in the district and division where the state action is pending, "containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  Such notice of removal is proper if filed within thirty-days from the date when the case qualifies for federal jurisdiction.  See  Caterpillar Inc. v. Lewis, 519 U.S. at 68-69; 28 U.S.C. § 1446(b). The Tenth Circuit has further elaborated that, for the thirty-day period to begin to run, "this court requires clear and unequivocal notice from the [initial] pleading itself" that federal jurisdiction

is available.  Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 (10th Cir. 1998).  The Tenth Circuit specifically disagrees with "cases from other jurisdictions which impose a duty to investigate and determine removability where the initial pleading indicates that the right to remove may exist." Akin v. Ashland Chem. Co., 156 F.3d at 1036.

      **3.**      **Amendment of the Notice of Removal.**

In Caterpillar, Inc. v. Lewis, the Supreme Court of the United States held that a defect in subject-matter jurisdiction cured before entry of judgment did not warrant reversal or remand to state court.  See 519 U.S. at 70-78.  Similarly, citing Caterpillar, Inc. v. Lewis, the Tenth Circuit has held that "a defect in removal procedure, standing alone, is not sufficient to warrant vacating judgment and remand to state court if subject matter jurisdiction existed in the federal court." Browning v. Am. Family Mut. Ins. Co., 196 F.App'x 496, 505-06 (10th Cir. 2010).  In McMahon v. Bunn-O-Matic Corp., 150 F.3d 651 (7th Cir.1998)(Easterbrook, J.), the United States Court of Appeals for the Seventh Circuit noticed on appeal defects in the notice of removal, including that the notice failed to properly allege diversity of citizenship.  See 150 F.3d at 653 ("As it happens, no one paid attention to subject-matter jurisdiction . . . .").  The Seventh Circuit permitted the defective notice of removal to be amended on appeal to properly establish subject-matter jurisdiction.  See 150 F.3d at 653-54.

The Tenth Circuit has allowed defendants to remedy defects in their petition or notice of removal.  See Jenkins v. MTGLQ Investors, 218 F.App'x. 719, 723 (10th Cir. 2007)(granting unopposed motion to amend notice of removal to properly allege jurisdictional facts); Watkins v. Terminix Int'l Co., Nos. CIV 96–3053, 96–3078, 1997 WL 34676226, at *2 (10th Cir. May 22, 1997)(per curiam)(reminding the defendant that, on remand, it should move to amend the notice of removal to properly allege jurisdictional facts); Lopez v. Denver & Rio Grande W.R.R. Co., 277

-13-

F.2d 830, 832 (10th Cir.  1960)("Appellee's motion to amend its petition for removal to supply sufficient allegations of citizenship and principal place of business existing at the time of commencement of this action is hereby granted, and diversity jurisdiction is therefore present."). The Tenth Circuit has further reasoned that disallowing amendments to the notice of removal, even after the thirty-day removal window had expired, when the defendant made simple errors in its jurisdictional allegations,"would be too grudging with reference to the controlling statute, too prone to equate imperfect allegations of jurisdiction with the total absence of jurisdictional foundations, and would tend unduly to exalt form over substance and legal flaw-picking over the orderly disposition of cases properly committed to federal courts." Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 301 (10th Cir. 1968).  The Tenth Circuit noted that a simple error in a jurisdictional allegation included failing to identify a corporation's principal place of business or referring to an individual's state of residence rather than citizenship.  Hendrix v. New Amsterdam Cas. Co., 390 F.2d at 301.  In McEntire v. Kmart Corp., No. CIV 09-0567, 2010 WL 553443 (D.N.M.  Feb. 9, 2010)(Browning, J.), when faced with insufficient allegations in the notice of removal -- allegations of "residence" not "citizenship" -- this Court granted the defendants leave to amend their notice of removal to cure the errors in some of the "formalistic technical requirements."  2010 WL 553443, at *8 (citing Hendrix v. New Amsterdam Cas. Co., 390 F.2d 299, 300-02 (10th Cir. 1968)).  Further, in Thompson v. Intel Corp., this Court permitted the defendant Intel Corp. to amend its notice of removal to include missing jurisdictional elements, including evidence that its principal place of business and corporate headquarters -- the center of Intel Corp.'s direction, control, and coordination of activities -- is out of state, so that the diversity requirements were met.  See 2012 WL 3860748, at *1.

There are limits to the defects which may be cured by an amended notice of removal, as

Professors Wright and Miller have explained:

> [A]n amendment of the removal notice may seek to accomplish any of several objectives: It may correct an imperfect statement of citizenship, state the previously articulated grounds more fully, or clarify the jurisdictional amount. In most circumstances, however, defendants may not add completely new grounds for removal or furnish missing allegations, even if the court rejects the first-proffered basis of removal, and the court will not, on its own motion, retain jurisdiction on the basis of a ground that is present but that defendants have not relied upon.

14 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 3733, at 651-659 (4th ed. 2009)(footnotes omitted).  Professor Moore has similarly recognized: "[A]mendment may be permitted after the 30-day period if the amendment corrects defective allegations of jurisdiction, but not to add a new basis for removal jurisdiction."  16 James William Moore, Moore's Federal Practice, § 107.30[2][a][iv], at 107-184 (3d ed. 2012).  Thus, where diversity jurisdiction is asserted as a basis for removal of an action to federal court, the district court may permit the removing defendant to amend its removal notice, if necessary, to fully allege facts which satisfy the requirements of diversity jurisdiction by a preponderance of the evidence.

### 4.    Consideration of Post-Removal Evidence.

As this Court has previously explained, the Tenth Circuit looks to both evidence in the complaint, and submitted after the complaint, in determining whether the criteria necessary for removal are met.  See Thompson v. Intel Corp., 2012 WL 3860748, at *8 (citing McPhail v. Deere & Co., 529 F.3d at 956.  The Tenth Circuit explained, in McPhail v. Deere & Co., that a district court may have evidence presented to a district court after a notice of removal has been filed, even if produced at a hearing on subject-matter jurisdiction, to determine if the jurisdictional requirements are met.  See 529 F.3d at 593.  "[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward."  529

-15-

F.3d at 593 (citing Meridian Secs. Ins. Co. v. Sadowski, 441 F.3d 536, 541-42 (7th Cir. 2006)(Easterbrook, J.), and Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002)).  As this Court has explained, "the Seventh Circuit, on which the Tenth Circuit has heavily relied when addressing the amount in controversy, has recognized that 'events subsequent to removal may clarify what the plaintiff was actually seeking when the case was removed.'" Aranda v. Foamex Int'l, No. CIV 12-0405 JB/ACT, 2012 WL 2923183, at *18 (D.N.M. July 11, 2012) (Browning, J.)(quoting Carroll v. Stryker Corp., 658 F.3d 675, 681 (7th Cir. 2011)).[7]  Thus,

_____

[7]The Court has found that the language in McPhail v. Deere & Co., to some extent, conflicts with older Tenth Circuit decisions, but nevertheless defines the scope of evidence a district court may consider when determining its jurisdiction over a matter removed from state court:

> McPhail v. Deere & Co. appears to conflict with the Tenth Circuit's previous decisions in Laughlin v. Kmart Corp., and Martin v. Franklin Capital Corp..  In Laughlin v. Kmart Corp., the Tenth Circuit held that "Kmart's economic analysis of Laughlin's claims for damages prepared after the motion for removal and purporting to demonstrate the jurisdictional minimum does not establish the existence of jurisdiction at the time the motion was made." 50 F.3d at 873. In Martin v. Franklin Capital Corp., the Tenth Circuit held that the defendant's summary of the allegations and the requested relief "[did] not provide the requisite facts lacking in the complaint." 251 F.3d at 1291.

Aranda v. Foamex Int'l, 2012 WL 2923183, at * 15.  The Court explained that, although there is some conflicting precedent within the Tenth Circuit on this matter, it is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists, in light of the Tenth Circuit's clarification of its precedents in McPhail v. Deere & Co..  Aranda v. Foamex Int'l, 2012 WL 2923183, at *11-12. Indeed, the Tenth Circuit admitted that its "opinions have not been entirely clear on [this amount-in-controversy] issue," but held that its ruling in McPhail v. Deere & Co. was consistent with the Tenth Circuit's prior holdings and analysis. McPhail v. Deere & Co., 529 F.3d at 954-55.  Describing its holding in Martin v. Franklin Capital Corp., in which the Tenth Circuit stated that a defendant must "establish the jurisdictional amount by a preponderance of the evidence," the Tenth Circuit said "it would have been more precise to say that the defendant must affirmatively establish jurisdiction by proving jurisdictional *facts* that made it *possible* that $75,000 was in play, which the defendants in Martin failed to do." McPhail v. Deere & Co., 529 F.3d at 955 (emphasis in original). With respect to Laughlin v. Kmart Corp., the Tenth Circuit clarified that it was "presented with a petition and a notice of removal that both only referred to damages in excess of $10,000." McPhail v. Deere & Co., 529 F.3d at 955.  Furthermore, the notice of removal in Laughlin v. Kmart Corp. referred only to the removal statute and "thus no jurisdictional amounts

when determining if the requirements for federal jurisdiction are met in a matter removed from state court, a district court may consider evidence submitted after removal.  See Thompson v. Intel Corp., 2012 WL 3860748, at *14 ("[I]t is appropriate to consider post-removal evidence to determine whether subject-matter jurisdiction exists.").

## RELEVANT LAW REGARDING DIVERSITY JURISDICTION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"  Thompson v. Intel Corp., 2012 WL 3860748, at *12 (citing 28 U.S.C. § 1332(a)).  As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute."  McEntire v. Kmart Corp., 2010 WL 553443, at*3 (citing Strawbridge v. Curtiss, 7 U.S. 267, 267-68 (1806); McPhail v. Deere & Co., 529 F.3d at 951).  The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation."  Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507 JB/KBM, 2012 WL 1132374, at *15 (D.N.M. Mar. 19, 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956).

------

are incorporated into the removal notice by reference to the statute."  Laughlin v. Kmart Corp., 50 F.3d at 873.  Accordingly, even though there appears to be some tension between these decisions, because the Tenth Circuit, in McPhail v. Deere & Co., characterized its holding as consistent with its prior decisions and because McPhail v. Deere & Co. is the Tenth Circuit's most recent, and most thorough, discussion of how to determine the amount in controversy, the Court will focus its analysis on that case.  The Court thus finds that the Tenth Circuit's approach in Laughlin v. Kmart is "on of the most restrictive approaches to removal," and the Tenth Circuit has clarified its stance to allow a court to consider post-removal evidence when determining if federal court jurisdictional requirements are met.  Aranda v. Foamex Int'l, 2012 WL 2923183, at n.11.

1.      **Diversity of Citizenship.**

For diversity-jurisdiction purposes, citizenship is determined by a person's domicile.  See

Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983).  "A person's domicile is defined as the place

in which the party has a residence in fact and an intent to remain indefinitely, as of the time of the

filing of the lawsuit."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing Crowley v. Glaze,

710 F.2d at 678).  See also Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428

(1991)(holding that diversity jurisdiction is assessed as of the time at which the suit is filed).  If

neither a person's residence nor the location where the person has an intent to remain can be

established, the person's domicile is that of his or her parents' at the time of the person's birth.  See

Gates v. C.I.R., 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a

domicile of origin.  The domicile of origin which the law attributes to an individual is the domicile

of his parents.  It continues until another domicile is lawfully acquired.").  Additionally, "while

residence and citizenship are not the same, a person's place of residence is prima facie evidence of

his or her citizenship."  McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut.

Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)).

In terms of determining a corporation's citizenship for diversity purposes, Congress has

stated that "a corporation shall be deemed to be a citizen of every State and foreign state by which

it has been incorporated and of the State or foreign state where it has its principal place of business."

28 U.S.C. § 1332(c)(1).  While determining where a corporation is incorporated may be determined

by looking to the corporation's registrations, a corporation's  "principal place of business" is a more

amorphous criteria, and, until recently, the United States' Courts of Appeals had adopted "divergent

and increasingly complex interpretations" of the term.  Hertz Corp. v. Friend, 130 S.Ct. at 1192.  In

Hertz Corp. v. Friend, the Supreme Court clarified the test for determining the location of a

corporation's principal place of business.  See 130 S.Ct. at 1192.  Specifically, it held "that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."  130 S.Ct. at 1192.  The Supreme Court related that this location "is the place that Courts of Appeals have called the corporation's 'nerve center.'"  130 S.Ct. at 1192.  The Supreme Court clarified that, "in practice," this location "should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings."  130 S.Ct. at 1192.  The Supreme Court stated that "[a] corporation's 'nerve center,' usually its main headquarters, is a single place."  130 S.Ct. at 1193. The Supreme Court adopted this rule over a different approach some courts had followed that focused on "the total amount of business activities that the corporation conducts" in a state, because: (i) focusing on the total amount of business activities in a state "invites greater litigation and can lead to strange results"; and (ii) "administrative simplicity is a major virtue in a jurisdictional statute."  130 S.Ct. at 1193.

####        2.        **Amount in Controversy.**

The existence of diversity jurisdiction must be established by a preponderance of the evidence.  See McPhail v. Deere & Co., 529 F.3d at 953.  In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]."  McPhail v. Deere & Co., 529 F.3d at 955.  The Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court.  McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant

proves "jurisdictional facts that make it possible that $75,000 is in play."  McPhail v. Deere & Co.,

529 F.3d at 955.

In McPhail v. Deere & Co., the Tenth Circuit relied on the Seventh Circuit's decision in

Meridian Secs. Ins. Co. v. Sadowski, in which the Honorable Frank H. Easterbrook, Circuit Judge,

explained how a removing defendant asserting diversity jurisdiction in the face of a silent complaint

might proceed:

> [T]he removing defendant, as proponent of federal jurisdiction, must establish what
> the plaintiff stands to recover.  We have suggested several ways in which this may
> be done -- by contentions, interrogatories or admissions in state court; by calculation
> from the complaint's allegations[;] by reference to the plaintiff's informal estimates
> or settlement demands[;] or by introducing evidence, in the form of affidavits from
> the defendant's employees or experts, about how much it would cost to satisfy the
> plaintiff's demands.   The list is not exclusive; any given proponent of federal
> jurisdiction may find a better way to establish what the controversy between the
> parties amounts to, and this demonstration may be made from either side's viewpoint
> (what a judgment would be worth to the plaintiff, or what compliance with an
> injunction would cost the defendant).  Once the estimate has been made -- and
> contested factual allegations that support the estimate have been established in a
> hearing under Rule 12(b)(1) by admissible evidence . . . then . . . the case stays in
> federal court unless it is legally certain that the controversy is worth less than the
> jurisdictional minimum.

441 F.3d at 541-42 (citations omitted).  The Tenth Circuit adopted the reasoning of the Seventh

Circuit, stating:

> Meridian eliminates the double standard that would come from misunderstanding
> what "preponderance of the evidence" requires. The proponent of federal jurisdiction
> must prove contested facts; and because a defendant has no control over the
> complaint, he cannot put a large sum of money in controversy simply by demanding
> it, as a plaintiff often can.  But once those underlying facts are proven, a defendant
> (like a plaintiff) is entitled to stay in federal court unless it is "legally certain" that
> less than $75,000 is at stake.

McPhail v. Deere & Co., 529 F.3d at 954.  Thus, a defendant removing a matter to federal court has

met his or her burden in proving the amount-in-controversy requirement if the defendant has proved

any contested facts regarding the amount-in-controversy, and the amount-in-controversy is not

legally certain to be less than $75,000.00.

    As this Court has previously explained, "[i]n the absence of an explicit demand for more than $75,000.00, the defendant must show how much is in controversy through other means." Salazar v. Geico Ins. Co., No. CIV 10-0118 JB/RLP, 2010 WL 2292930, at *3 (D.N.M. Apr. 27, 2010)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 955).   The Tenth Circuit has identified the means upon which a defendant may rely to show how much is in controversy: (i) the defendant may rely on an estimate of the potential damages from the allegations in the complaint; (ii) the defendant may rely on other documentation to provide a basis for determining the amount in controversy, such as interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward; and (iii) the defendant may rely on the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate of the plaintiff's claim, because the plaintiff's own estimation of its claim is a proper means of supporting the allegations in the notice of removal.  See Salazar v. Geico, 2010 WL 2292930, at *3 (citing McPhail v. Deere & Co., 529 F.3d at 956).  In McPhail v. Deere & Co., the Tenth Circuit found that the defendant met its burden to support diversity jurisdiction where the plaintiff's complaint was silent on the amount in controversy.  In its notice of removal, the defendant represented that the amount in controversy exceeded $75,000.00, and incorporated electronic-mail messages and letters of conversations between the parties' attorneys discussing the value of the claim.  The defendant's counsel interpreted the conversation as meaning that the plaintiff was seeking more than $75,000.00, but the plaintiff's counsel refused to concede an amount in controversy in excess of $75,000.00, stating "it may very well be" that the amount in controversy would exceed $75,000.00.  529 F.3d at 957.  The Tenth Circuit found that the background information provided enough supplementary information for the district court to conclude that it was not legally certain that the plaintiff would recover an amount

less than $75,000.00.  See 529 F.3d at 957.  In so ruling, the Tenth Circuit gave the example of a

case in which a defendant has allegedly breached a contract and the plaintiff seeks damages in an

indeterminate amount.  The Tenth Circuit suggested that "a defendant might support jurisdiction by

attaching a copy of the contract, valued at more than $75,000, to the notice of removal."  529 F.3d

at 956.

An example of an amount-in-controversy which is not legally certain to reach $75,000.00

is seen in Martin v. Franklin Capital Corp..  See 251 F.3d at 1291.  In Martin v. Franklin Capital

Corp., the defendant's notice of removal totaled up all of the dollar figures in the plaintiff's

complaint, but some of the dollar amounts were considered background information that were not

linked to the plaintiff's attempts to recover damages.  See 251 F.3d at 1291.  Because the Tenth

Circuit found that the defendant's notice of removal depended on an erroneous "construction of the

[plaintiff's] pleading," the Tenth Circuit held that the amount-in-controversy requirement was not

met.  251 F.3d at 1291.

## ANALYSIS

MCS Industries has met its burden in showing that its removal of this action to federal court

is proper under the Court's diversity jurisdiction.  MCS Industries' Notice of Removal was timely,

filed within thirty days of Carrillo's commencement of suit in state court -- as both parties agree.

See Caterpillar, Inc. v. Lewis, 519 U.S. at 68-69 ; 28 U.S.C. § 1446(b)(stating that removal is timely

if filed by a party within thirty-days of being served with a summons and complaint, as days are

counted under rule 11 of the Federal Rules of Civil Procedure).  MCS Industries has provided

sufficient facts, in its Amended Notice of Removal, to establish that its principal place of business

is in Pennsylvania, and is thus diverse to Carrillo, who is domiciled in Texas.  Additionally, the

parties do not dispute the facts which would give rise to Carrillo's damages claim and establish the

amount-in-controversy.  Based on the facts in Carrillo's First Amended Petition, and as discussed in the Court's hearing on this matter, the amount-in-controversy is not legally certain to be less than $75,000.00.  Moreover, Carrillo would not stipulate that he would seek less than $75,000.00 in damages.  The Court will thus deny Carrillo's Motion to Remand, as removal to federal court is proper in this case.

I.    **MCS INDUSTRIES HAS ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT IT IS DIVERSE TO CARRILLO.**

The Court finds, by a preponderance of the evidence, that Carrillo and MCS Industries are diverse to one another.  Carrillo has at all times asserted that he is a resident of El Paso, and MCS Industries does not contest this assertion.  See First Amended Petition at 1; Response at 2; Amended Notice of Removal ¶ 7, at 2.  Carrillo's domicile is thus El Paso, making him a citizen of Texas for the purposes of diversity jurisdiction.  See McEntire v. Kmart Corp., 2010 WL 553443, at *3 (holding that a person's domicile is the location where he resides with an intent to stay).

MCS Industries has provided sufficient facts in its Amended Notice of Removal to establish that its principal place of business is Easton.  The Amended Ehrhardt Aff. -- Diversity affirms that MCS Industries is incorporated in the State of Pennsylvania and has its corporate headquarters in Easton, and that Easton is the location where MCS Industries' officers -- including its chairman, board of directors/chief executive officer, president/chief operating officer, executive vice president, and several other vice presidents -- are assigned to work.  See Amended Ehrhardt Aff. -- Diversity ¶¶ 3-5, at 1.  Further, the Amended Ehrhardt Aff. -- Diversity affirms that MCS Industries' corporate office in Easton is the location from which MCS Industries' officers direct, control, and coordinate its corporate business activities.  See Amended Ehrhardt Aff. -- Diversity ¶ 6, at 2.  The Amended Ehrhardt Aff. -- Diversity affirms that MCS Industries is not incorporated in the State of New

Mexico, nor are any of its corporate officers assigned to work at its facility in New Mexico.  See Amended Ehrhardt Aff. -- Diversity ¶ 9, at 2.  The Amended Ehrhardt Aff. -- Diversity affirms that MCS Industries' facility in New Mexico is similar to facilities it has in other states, but is not MCS Industries' principal place of business, nor are any of MCS Industries' officers residents or citizens of New Mexico.  See Amended Ehrhardt Aff. -- Diversity ¶¶ 10, 12, at 2.

The Court may consider the Amended Ehrhardt Aff. -- Diversity in determining whether MCS Industries has met the Court's jurisdictional requirements, even though MCS Industries filed the Amended Ehrhardt Aff. -- Diversity, after it filed its Notice of Removal.  See McPhail v. Deere & Co., 529 F.3d at 593 ("[B]eyond the complaint itself, other documentation can provide the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward," to show that a matter comes within a federal court's diversity jurisdiction).  MCS Industries is not asserting a new basis for jurisdiction, or a new allegation not present in its Notice of Removal; rather, the evidence in MCS Industries' Amended Notice of Removal provides greater detail regarding the same basis for jurisdiction asserted in MCS Industries' Notice of Removal.  Compare Notice of Removal ¶¶ 13-14, with Amended Notice of Removal ¶¶ 16-17 (both asserting that removal is proper under 28 U.S.C. § 1441, pursuant to the Court's diversity jurisdiction as defined in 28 U.S.C. § 1332); see Thompson v. Intel Corp., 2012 WL 3860748, at * 7 (quoting Wright & Miller, supra, § 3733, at 651-659, stating that a defendant "may not add completely new grounds for removal or furnish missing allegations" in an amended notice of removal).  Accordingly, the Court finds that MCS Industries' facts contained in the Amended Ehrhardt Aff. -- Diversity, are admissible in the Courts' determination of jurisdiction.

The Amended Ehrhardt Aff. -- Diversity provides sufficient facts to show that MCS

-24-

Industries' principal place of business is Easton, and not anywhere in New Mexico.  The Amended

Ehrhardt Aff. -- Diversity, affirms that MCS Industries is incorporated in the State of Pennsylvania,

one criteria for establishing its citizenship under 28 U.S.C. § 1332(c)(1).  Further, MCS Industries

has provided facts which show that its "nerve center" is in Easton -- by alleging that its officers are

assigned work and direct and control MCS Industries' activities out of its corporate offices in

Easton.  Just as the Supreme Court held in Hertz Corp. v. Friend that a corporation's "nerve center"

is its "principal place of business," these facts in the Amended Ehrhardt Aff. -- Diversity, show that

the "actual center of direction, control, and coordination" is MCS Industries' corporate headquarters

in Easton.  130 S.Ct. at 1192.  The Supreme Court has rejected any determination of a corporation's

principal place of business which would rest on the "total amount of business activities" conducted

in a state, which appears to be Carrillo's basis for alleging MCS Industries' citizenship should be

New Mexico, because MCS Industries could anticipate being called into suit in the State.  130 S.Ct.

at 1193.

     Additionally, MCS Industries' situation is factually similar to that of Intel Corp., which the

Court ruled, in Thompson v. Intel Corp., had its principal place of business in Santa Clara,

California.  See 2012 WL 3860748, at * 16-17.  Intel Corp. submitted to the Court, in support of its

notice of removal, an affidavit of an employee in Intel Corp.'s corporate risk management

department.  See 2012 WL 3860748, at *2.  The affidavit affirmed that Intel Corp. was incorporated

in the State of Delaware, had its principal place of business in the State of California, and its

corporate headquarters was in Santa Clara.  See 2012 WL 3860748, at *16.  The affidavit further

affirmed that Intel Corp. held its board meetings with corporate officers, including the President and

CEO, at its Santa Clara headquarters.  See 2012 WL 3860748, at *16.  Although Intel Corp. had a

manufacturing complex in Rio Rancho, New Mexico, the affidavit affirmed that no corporate

officers resided in New Mexico and no board meeting were held in New Mexico.  See 2012 WL 3860748, at *16.  The Court found, under the Supreme Court's nerve center test that Intel Corp. had met its burden of showing that its principal place of business was in Santa Clara, not anywhere in New Mexico.  See 2012 WL 3860748, at *17 ("Intel Corp.'s burden to invoke federal court jurisdiction is only by a preponderance of the evidence, so it is sufficient to prove that its principal place of business is in California, that Intel Corp. has provided evidence that its corporate headquarters are in California.").  Similarly, here, MCS Industries has provided an affidavit that affirms that MCS Industries' corporate headquarters is in Easton.  In Thompson v. Intel Corp., the Court noted that requiring more evidence than Intel Corp. had provided would be "unsound," because "[a]dministrative simplicity is a major virtue in a jurisdictional statute."  2012 WL 3860748, at *17 (quoting Hertz Corp. v. Friend, 130 S.Ct. at 1193).  The Court thus finds that, consistent with its opinion in Thompson v. Intel Corp., MCS Industries has met its burden of showing that its principal place of business is in Easton, and that it is a citizen of Pennsylvania, and diverse to Carrillo, a resident of Texas.

> [U]nder the nerve center test, a statement in an affidavit, assuming the affiant has personal knowledge, that a corporation has its corporate headquarters in a given State is sufficient, absent contrary evidence, to show by a preponderance of the evidence that the corporation's principal place of business is located in that State.

Thompson v. Intel Corp., 2012 WL 3860748, at *17.

## II.   MCS INDUSTRIES HAS ESTABLISHED, BY A PREPONDERANCE OF THE EVIDENCE, THAT THE AMOUNT-IN-CONTROVERSY REQUIREMENT IS MET.

The Court finds that MCS Industries has established, in accordance with its burden defined in McPhail v. Deere & Co., that the amount-in-controversy requirement is met by a preponderance of the evidence.  Although Carrillo's First Amended Petition is silent as to the specific amount of damages he believes are at issue, Carrillo admitted at the hearing that he would not be willing to

-26-

stipulate that his damages are less than $75,000.00.  See First Amended Petition at 3-4; Tr. at 4:3-7 (Court, Granberg)(the Court asked Carrillo if he is "willing to stipulate . . . that the damages are not going to exceed $75,000.00," and Carrillo responded, "no.").  Further, as the Court discussed with the parties at the hearing, because Carrillo has alleged damages for lost past wages and future wages and income until his retirement, a simple calculation, based on his salary when terminated at the age of fifty-seven, puts his amount of damages in the range of $237,000.00 were he to retire in eight years, well over the amount-in-controversy requirement.  See Tr. at 4:19-23, 5:8-12 (Court, Granberg)(the Court, noting Carrillo's age to be fifty-seven, inquired if the damages would be in the "picture of $237,000.00," accounting for eight more years of employment, and Carrillo responded, "yes."); Tr. at 8:11-16 (Katovsky)(asserting that Carrillo's seeking damages of at least $237,000.00, is a "reasonable inference if . . . [Carrillo is] claiming lost wages until retirement and [he was] making $37,000.00 a year.").

       The Tenth Circuit's most recent opinion discussing how a defendant may establish the amount in controversy is McPhail v. Deere & Co..  In that opinion, the Tenth Circuit held that the "preponderance of the evidence standard" applies to jurisdictional facts, not jurisdiction itself. McPhail v. Deere & Co., 529 F.3d at 954.  Thus, the proponent of federal jurisdiction bears the burden of proving contested facts, "[b]ut once those underlying facts are proven, a defendant (like a plaintiff) is entitled to stay in federal court unless it is 'legally certain' that less than $75,000 is at stake."  McPhail v. Deere & Co., 529 F.3d at 954 (quoting Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d at 541-42).  Additionally, the proponent of federal jurisdiction may bring facts beyond the complaint itself, including other documentation, as "the basis for determining the amount in controversy -- either interrogatories obtained in state court before removal was filed, or affidavits or other evidence submitted in federal court afterward."  McPhail v. Deere & Co., 529 F.3d at 956

-27-

(emphasis added).  Further, New Mexico law provides that a "complaint shall not contain an allegation for damages in any specific monetary amount," N.M.R.A. 1-008(A)(3), so it should be expected that Carrillo's First Amended Petition would be silent as to the amount of damages, and the Court must look to the Notice of Removal and Amended Notice of Removal to determine if the amount-in-controversy requirement is met.  See Aranda v. Foamex Int'l., 2012 WL 2923183, at *16 (noting that, because a complaint filed in New Mexico state court is not supposed to allege the amount of damages, "[t]he [district] [c]ourt will therefore look to the allegations in the Notice of Removal, pursuant to 28 U.S.C. § 1446(c)(2), to determine the amount in controversy").

In this instance, although Carrillo was silent as to the amount of damages he will seek, his First Amended Petition alleges that he will seek damages for not only lost past and future wages and income, but also lost bonuses, pay raises, rewards, and past and future pain and suffering.  See First Amended Petition at 3-4.  In McPhail v. Deere & Co., the Tenth Circuit found that the amount-in-controversy requirement was met on the face of a complaint, in which a plaintiff requested damages for "medical and burial expenses, the loss of consortium and the grief of the surviving spouse, the mental pain and anguish suffered by the decedent, pecuniary loss based on earning capacity, and grief and loss of companionship," as well as punitive damages.  529 F.3d at 957.  The Tenth Circuit noted that, "[g]iven these allegations and the nature of the damages sought, the complaint on its face may be sufficient by itself to support removal."  McPhail v. Deere & Co., 529 F.3d at 957.  Carrillo's requested relief may, similarly, be sufficient on the face of his First Amended Petition to show that he will seek over $75,000.00 in damages.  The Court need not, however, stop at Carrillo's First Amended Petition.  MCS Industries has provided the Court with an affidavit from a human resources supervisor, a person with knowledge to affirm, who states that Carrillo was making $37,000.00 per year in salary, exclusive of benefits.  See Ehrhardt Aff. -- AIC ¶ 4, at 1.  As Carrillo

plans to seek damages until his retirement, his salary alone will likely amount to over $237,000.00 in damages, because he was terminated at the age of fifty-seven and admitted at the hearing he planned to retire eight years later.  This assertion is not an "erroneous construction" of Carrillo's First Amended Petition.  Martin v. Franklin Capital Corp., 251 F.3d at 1291.  Further, in accordance with MCS Industries' burden of establishing the amount-in-controversy requirement by a preponderance of the evidence, MCS Industries has shown that there is not a factual dispute as to the basis of Carrillo's damages.  See McPhail v. Deere & Co., 529 F.3d at 954 (holding that the proponent of federal jurisdiction must prove any contested facts that would preclude the amount-in-controversy from being met).  Carrillo and MCS Industries stated at the hearing that they believe the amount in controversy will be over $237,000.00, based on lost wages alone, and Carrillo asserted that he would not be willing to stipulate the amount in controversy is less than $75,000.00.  These assertions are similar to those in McPhail v. Deere & Co., where part of the Tenth Circuit's finding of federal jurisdiction was based on the parties' statements in electronic mail transmissions, in which the plaintiff stated he believed that the amount in controversy was likely to be above $75,000.00. See 529 F.3d at 957.  These facts show that Carrillo's amount of damages is not "legally certain" to be less than $75,000.00.  McPhail v. Deere & Co., 529 F.3d at 954 (holding that, after a proponent of federal jurisdiction has proven any contested facts, the party may remain in federal court unless it is "legally certain" that less than $75,000.00 is at stake in the matter).

Thus, MCS Industries has met of burden in establishing the facts needed for federal diversity requirements by a preponderance of the evidence.  MCS Industries may provide, and has provided, additional evidence in its Amended Notice of Removal which establishes that the jurisdictional requirements are met.  MCS Industries has provided the Court with the affidavit of a person with knowledge who affirms that MCS Industries' corporate headquarters -- where board meetings are

held and from which MCS Industries' officers direct corporate activities -- is in Easton, and not anywhere in New Mexico. The Court thus finds that MCS Industries' nerve center, and principal place of business, is Easton. Further, MCS Industries has shown that the parties do not contest the facts which would give rise to Carrillo seeking over $75,000.00 in damages, as Carrillo is likely seeking eight years' of his salary upon termination, $37,000.00, plus benefits. Carrillo will not stipulate that he will seek less than the amount-in-controversy requirement. The Court thus finds that this matter may have originally been brought in federal court under a district court's diversity jurisdiction, and MCS Industries' removal of this matter is proper.

**IT IS ORDERED** that  Plaintiff's Motion to Remand, filed June 26, 2012 (Doc. 11), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John L. Granberg
Granberg Law Office
El Paso, Texas

    *Attorney for the Plaintiff*

Stanley K. Kotovsky , Jr.
Tinnin Law Firm, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendant*